William H. Swift et al., Respondents, *v.* The Pacific Mail Steamship Company et al., Appellants.

Where a consignor of goods delivered to a common carrier for transportation, although not the general owner, has a lien upon or a special interest in the goods and makes the contract and pays the freight, he may bring an action for breach of the contract in his own name.

Where, therefore, the owners of whaling vessels were the consignors and consignees of a quantity of oil and paid the freight thereon, *held*, the fact that the seamen on the vessels had an interest in the proceeds of the sale of the oil did not make them necessary parties to an action against the carrier for breach of contract.

A corporation carrying over a portion of a continuous line of transportation, may contract to carry beyond the terminus of its route.

It may also contract to receive goods away from its terminus, to be transported to such terminus over the route of another carrier, and then to be forwarded over its route, when the making of such a contract is in the prosecution of and incidental to its corporate business.

*It seems* this right of a corporate carrier to go beyond its terminus to procure freight is not absolute and unqualified. It must be exercised within reasonable limits and under such circumstances that it may fairly be said to be incident to its legitimate corporate business.

Two corporations, each carrying over a portion of a continuous route, may enter into joint contracts for transportation.

Defendant, the P. M. S. Co., was organized to navigate steamships on the Pacific and Atlantic Oceans (Chap. 207, Laws of 1850.) Its line connected at Panama on the Pacific and at Aspinwall on the Atlantic with the road of defendant, the P. R. R. Co., which was operating under its charter a railroad between those places. In an action upon a joint contract made by the two corporations for the transportation of a quantity of oil from Panama to New York, *held*, that defendants had power to make the contract and were jointly liable for a breach thereof.

The parties made a special contract as to the transportation of the oil. Two months after its delivery at Panama the common agent of the defendants here, executed bills of lading which were sent to plaintiffs, but were not received until after the oil had left Aspinwall. The contract, as set forth in the bills, was different from that actually made. *Held*, that defendants could not alter or abrogate the contract actually made, by issuing the bills of lading; and, in the absence of proof establishing that plaintiffs consented to accept the bills in place of the prior contract, the latter must control.

The damage complained of was caused by unjustifiable delay and carelessness while the oil was in the possession of the railroad company.

*Held,* that conceding the contract for transportation was made with the steamship company alone, then defendants were severally liable, the railroad company as common carrier upon general principles, the steamship company under the special contract.

(Argued May 12, 1887; decided June 7, 1887.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 8, 1885, which affirmed a judgment in favor of plaintiffs entered upon a verdict and affirmed an order denying a motion for a new trial.

This action was brought by the plaintiffs, as shippers, against the defendants, as common carriers, to recover damages for breach of a joint contract for the carriage of whale oil from Panama to New York.

The complaint alleged that the plaintiffs were copartners and that the defendants were corporations organized under the laws of this State; that the business of the Panama Railroad Company, among other things, was the transportation of freight from Panama by rail to Aspinwall, and there to deliver the same to the Pacific Mail Steamship Company, whose business it was, among other things, to transport the freight so received by vessel to New York; that the defendants, for a single price named, entered into a joint contract to carry the oil from Panama to New York; that they entered upon the performance of their contract in the months of January and February, 1873, and delivered a portion of the oil received by them from the plaintiffs, in the city of New York, about the 23d of April, 1873; that, owing to the negligence, delay and improper handling of the oil, and the casks containing the same, by the defendants, the oil was greatly damaged and injured, and a large part of it was lost by leakage while at Panama, on its way across the Isthmus, at Aspinwall, and also on the passage from Aspinwall to New York, and that by reason of negligence, improper conduct and mismanagement of the defendants, the plaintiffs suffered damages in the sum of $20,000, besides interest. Each of the defendants, by

a separate answer, among other things, denied the joint contract and the joint liability alleged in the complaint; alleged that the oil was delivered and carried under a special contract, printed and in writing, copies of which were delivered to plaintiffs, wherein the several rights and liabilities of plaintiffs and defendants, and each of them, with respect to plaintiffs and to each other, relative to the subject-matter of the complaint, were limited, defined and determined, and that its undertaking in regard to the oil was only under such contract, which it had fully performed; that it was not liable for losses accruing upon the route of the other defendant; and each defendant also alleged, as a separate defense, that there was a defect of parties plaintiff, and that several other persons named were then, and also at the time of the making of the contract and the transportation of the oil, jointly interested with the plaintiffs in the oil.

The further material facts are stated in the opinion.

*George Hoadley* for appellants. There was a defect of parties plaintiff, and the plaintiffs were not entitled to recover. (1 Greenleaf on Ev., §§ 56, 58; *Addington* v. *Magan*, 20 L. J. R. [N. S.] C. P. 82.) The Pacific Mail Steamship Company had no legal authority to enter into the alleged contract. (*Weed* v. *S. & S. R. Co.*, 19 Wend. 534; Shouler on Bailments, 336; *Perkins* v. *Portland, etc., R. Co.*, 47 Me. 573; *Muschamp* v. *L. & P. J. R. Co.*, 8 M. & W. 421, 430; *Converse* v. *N. & N. Y. T. Co.*, 33 Conn. 166; *Hood* v. *N. Y. & N. H. R. R. Co.*, 22 id. 1.) The supposed joint contract of the railway and steamship company, upon which the judgment below is founded, was not established. (*Lippincott* v. *Low*, 68 Pa. St. 314; *Ins. Co.* v. *Railroad Co.*, 104 U. S. 146; *Myrick* v. *Mich. C. R. R. Co.*, 107 id. 102; *Champion* v. *Bostwick*, 18 Wend. 175; *Pattison* v. *Blanchard*, 1 Seld. 186; *Merrick* v. *Gordon*, 20 N. Y. 93; *Milnor* v. *N. Y. & N. H. R. R. Co.*, 53 id. 363; *Briggs* v. *Vanderbilt*, 19 Barb. 222, 237; *Hunt* v. *N. Y. & E. R. Co.*, 1 Hilt, 228; *C. H. & D. R. Co.* v.

*Pontius*, 19 Ohio St. 221; *Darling* v. *B. & W. R. R. Co.*, 11 Allen, 295; *Gass* v. *N. Y. P. & B. R. Co.*, 99 Mass. 220; *Burroughs* v. *N. & W. R. Co.*, 100 id. 26; *Aigen* v. *B. & Me. R. Co.*, 132 id. 423; *Block* v. *Fitch. R. Co.*, 139 id. 308; *H. S. R. Co.* v. *Trippe*, 42 Ark. 465; *Goldsmith* v. *Che. & Al. R. Co.*, 12 Mo. App. 479; *Snider* v. *A. Ex. Co.*, 63 id. 383; *Cit. Ins. Co.* v. *Kountze Line*, 4 Woods C. C. R. 268.) The only contract with the Pacific Mail Steamship Company proved in the case was created by the bills of lading. (*Shelton* v. *Mer. D. Tr. Co.*, 59 N. Y. 258. *Bishop* v. *Em. Tr. Co.*, 48 How. Pr. 119; *Oliver* v. *Mut. C. M. Ins. Co.*, 2 C. C. R. 277, 291; *B. & E. R. Co.* v. *Collins*, 7 H. L. C. 214.) It is immaterial that Mrs. Smith did not read the bills of lading. (Wood's Railway Law, 1577, 1578; *Bishop* v. *Em. Tr. Co.*, 48 How. Pr. 119; *Fibel* v. *Livingston*, 64 Barb. 179; *Geo. Ins. Co.* v. *M. & C. R. R. Co.*, 72 N. Y. 90; *Hills* v. *Syracuse, B. & N. Y. R. R. Co.*, 73 id. 351; *Madan* v. *Sherard*, 73 id. 334.) The oral communications did not constitute the contract. (*Long* v. *N. Y. C. R. R. Co.*, 50 N. Y. 77; 3 Wood's Railway Laws, 1577, n. 2; *Isaacson* v. *N. Y. C. & H. R. R. R. Co.*, 94 id. 284; *McDonald* v. *W. R. Corp.*, 34 id. 501; *Maghee* v. *Camden, etc. R. R. Co.*, 45 id. 524; *Fairfax* v. *N. Y. C. & H. R. R. R. Co.*, 37 Supr. Ct. R. 530; *B'k Kent'y* v. *Adams Ex. Co.*, 93 U. S. 165; *Hollister* v. *Nowlen*, 19 Wend. 241.) The contract is void for indefiniteness. (*Burroughs* v. *Norwich & W. R. R. Co.*, 100 Mass. 26; *Myrick* v. *M. & C. R. R. Co.*, 107 U. S. 102.) In any event, the contract as to this defendant was, at most, to transport from Aspinwall to New York. (*Harris* v. *Grand T. R. R. Co.*, 5 Atlantic R. 305; *Washburne & Moen M'fg Co.* v. *Prov. & W. R. R. Co.*, 113 Mass. 490; *Nutting* v. *Conn. R. R. R. Co.*, 1 Gray, 502; *Hoagland* v. *Hannibal & St. J. R. R. Co.*, 39 Mo. 451; *Weil* v. *Mer. D. Tr. Co.*, 7 Daly, 456.) The bills of lading constitute the contract. (*Shelton* v. *Mer. D. Tr. Co.*, 59 N. Y. 258; *Bishop* v. *Em. Tr. Co.* 48 How. Pr. 119; *Ins. Co.* v. *Railroad Co.*, 104 U. S. 146; *Van Santvoordt* v. *St. John*, 6 Hill, 157; *Steward*

v. *T. H. & I. R. R. Co.*, 3 Fed. R. 768 ; *Pem. Co.* v. *N. Y. C. R. R. Co.*, 104 Mass. 144 ; *W. St. L. & P. R. R. Co.* v. *Jaggerman*, 115 Ill. 407.) The bills of lading are established as the contract by the course of business between defendants. (*W & M. Man'fg. Co.* v. *P & W. R. Co.*, 113 Mass. 493 ; *Darling* v. *B. & W. R R. Corp.*, 11 Allen, 295 ; *Hinckley* v. *N. Y. C. & H. R. R. R. Co.*, 3 Supr. Ct. 281 ; *Blitz* v. *U. St'b Co.*, 51 Mich. 558.) In any event, the bills of lading are established as the contract of this defendant, The Pacific Mail Steamship Company. (*Hinckley* v. *N. Y. C. & H. R. R. R. Co.*, 3 Supr. Ct. 281 ; *Schiff* v. *N. Y. C. & H. R. R. R. Co.*, 52 How. Pr. 91 ; 16 Hun, 278.) The receipt without objection, and use made of the bills of lading, by Swift & Perry, and their agent Hunt, constitute a ratification of Crooker's assumption of agency for them, and a waiver of all objections thereto. (Story on Agency, § 242 ; *Codwise* v. *Hacker*, 1 Caines, 526 ; *Cairnes* v. *Bleecker*, 12 Johns. 300, 305 ; *Vianna* v. *Barclay*, 3 Cow. 281, 283 ; *Hazard* v. *Spears*, 4 Keyes, 469 ; 2 Abb. Ct. App. Dec. 353 ; *Gold M. Co.* v. *Nat. Bk.* 96 U. S. 640, 645 ; *Andrews* v. *Ætna Ins. Co.*, 92 N. Y. 596, 604 ; *Towles* v. *Stephenson*, 1 Johns, Ch. 110 ; *Armstrong* v. *Gilchrist*, 2 id. 424.) These acts also amount to a waiver of all objections to the bills of lading. (*Ger. Ins. Co.* v. *M. & C. R. R. Co.*, 72 N. Y. 90, 93 ; *Hill* v. *S. B. & N. Y. R. R. Co.*, 73 id. 351 ; *Long* v. *N. Y. C. R. R. Co.*, 50 id. 76.) If the letters and oral communications constituted a contract, they were never acted on. (*Ricketts* v. *B. & O. R. R. Co.*, 61 Barb. 18 ; 4 Lans. 446 ; 59 N. Y. 637 ; *C. & G't W. R. R. Co.* v. *Dane*, 43 id. 240, 243.)

*William G. Choate* for Panama Railroad Company, appellant. Though a railroad corporation may contract to carry beyond its own line, yet it requires an express contract so to bind it. Such contract is not to be inferred from its sharing in a through freight, nor from its receiving and transporting the goods over its line in the course of a continuous passage under an agreement for a through freight. (*Root* v. *R. R.*

*Co.*, 45 N. Y. 530; *Faulkner* v. *Hart*, 82 id. 422; *Condict* v. *R. R. Co.*, 54 id. 500.) A contract whereby the liability of the company is sought to be extended beyond its own line will not be inferred from loose and doubtful expressions, but must be established by clear and satisfactory evidence. (*Myrick* v. *R. R. Co.*, 107 U. S. 102.) The bills of lading were the only contracts between the parties. (*Shelton* v. *Despa ch Co.*, 59 N. Y. 258, 262; *Ger. Ins. Co.* v. *R. R. Co.*, 72 id. 92, 93; *Hill* v. *R. R. Co.*, 73 id. 351, 353; *Bishop* v. *Trans. Co.*, 48 How. Pr. 119.) There was nothing in the prior negotiations and understanding inconsistent with that provision of the bills of lading,sti pulating for a restriction of liability of this defendant to its own line. This restriction was fairly within the contemplation of the parties, even if the parol agreement was not superseded by the bills of lading. (*McDonald* v. *R. R. Co.*, 34 N. Y. 501; *Isaacson* v. *R. R. Co.*, 94 id. 284; *Bank* v. *Ex. Co.*, 93 U. S. 165; *Oliver* v. *Ins. Co.*, 2 Curt. C. C. 291.) The persons named in the answers were shown to be interested in the oil and were necessary parties. (Code Civil Pro., § 449.)

*Austen G. Fox* for respondents. The uncontradicted evidence established a contract between the plaintiffs and the Pacific Mail Steamship Company to carry the oil through from Panama to New York, and it would have been proper for the court to direct a verdict in favor of the plaintiffs against that defendant. (*Mactier* v. *Frith*, 6 Wend. 139; *E. T. & G. R. R. Co.* v. *Montgomery*, 44 Ga. 278; *O. & L. R. R. Co.* v. *Pratt*, 22 Wall. 123; *Peck* v. *Vandermark*, 99 N. Y. 29; *Park* v. *Preston*, 22 W. Dig. 359.) For damages resulting from a default in the performance of this contract, the Pacific Mail Steamship Company is liable as a common carrier, even if it made the contract solely on its own behalf. (*Maghee* v. *C. & A. R. R. Co.*, 45 N. Y. 514, 518, 519; *Root* v. *G. W. R. R. Co.*, id. 524; *Quimby* v. *Vanderbilt*, 17 id. 306; *Burtis* v. *B. & S. L. R. Co.*, 24 id. 269; *Hart* v. *R. & S. R. R. Co.*, 8 id. 37; *Cary* v. *Ill. & Tol. R. R. Co.*, 29

Barb. 35, 36; *Le Sage,* v. *Gt W. & D. & M. R. R. Co.,* 1 Daly, 306; *Schroeder* v. *H. R. R. Co.,* 5 Duer, 55.) Whether the charter of the Pacific Mail Steamship Company expressly authorizes this contract or not, the defense of *"ultra vires"* is not good. (*Bissell* v. *M. S. & M. I. R. R. Co.,* 22 N. Y. 258; 53 id. 367; 63 id. 69; *Buffett* v. *T. & B. R. R. Co.,* 40 id. 168, 172; *Weed* v. *S. & S. R. R. Co.,* 19 Wend. 534, 537; *B. & P. St. Co.,* v. *Bruce,* 54 Pa. St. 77; *Maghee* v. *C. & A. R. R. Co.,* 45 N. Y. 519.) The company having undertaken to execute the contract and collected the compensation agreed on, cannot now object that its officers had no authority to make the contract. (*Goodrich* v. *Thompson,* 4 Robt. 75; 44 N. Y. 324; *White* v. *A. & S. R. R. Co.,* 5 Lans. 475.) These facts are sufficient in law to sustain the finding of the jury that the contract was a joint contract. (*King* v. *Sarria,* 69 N. Y. 24; *Wylde* v. *Nor. R. R. Co.,* 53 id. 156; *Barton* v. *Wheeler,* 49 N. H. 9; *Case* v. *Baldwin,* 136 Mass. 90; *Gill* v. *Manchester R. Co.,* L. R., 8 Q. B. 186; *Hart* v. *R. & S. R. R. Co.,* 8 N. Y. 37; *Cobb* v. *Abbott,* 14 Pick. 289; *C. H. & D. R. R. Co.* v. *Spratt,* 2 Duval [Ky.], 4.) After the plaintiffs had parted with the oil, and the defendants had begun its transportation under the contract the jury had found was made, the defendants could not abrogate nor alter that contract by merely signing and mailing bills of lading which did not reach the plaintiffs until after much of the loss had occurred. (*Guillaume* v. *Gen'l Trans. Co.,* 100 N. Y. 491; *Bostwick* v. *B. & O. R. R. Co.,* 45 id. 712; *Coffin* v. *N. Y. C. R R. Co.,* 64 Barb. 632; 56 N. Y. 632; *Strohm* v. *D. & M. R. Co.,* 21 Wis. 554; *Park* v. *Preston,* 22 W. Dig. 359; Lawson on Conts. of Carriers, §§ 114, 115; *Wheeler* v. *N. B. & C. R. R. Co.,* 115 U. S. 29.) The plaintiffs can maintain this action for damages for the breach of the contract to which they were parties. (*Sargent* v. *Morris,* 3 B. & Ald. 277; *Dunlap* v. *Lambert,* 6 Cl. & Fin. 600; *Blanchard* v. *Gray,* 8 Gray, 281; *Finn* v. *Western R. R. Co.,* 112 Mass. 524; *Nor. Pack. L.* v. *Shearer,* 61 Ill. 263; Hutch. on Carriers, § 723; *Considerant* v. *Brisbane,* 22 N. Y. 389; Bliss on

Code Pleadings, § 59; *Allen* v. *Brown,* 44 N. Y. 328; *Meeker* v. *Calhorn,* id. 348; *Noe* v. *Christie,* 51 id. 270, 274; *Baxter* v. *Rodney,* 3 Pick. 435; *Grozier* v. *Atwood,* 4 id. 234; 23 id. 494, 495.) As the joint contract to carry through from Panama to New York made both the defendants liable as insurers, errors in the charge or in the admission of evidence, except as to the existence of the contract, are immaterial. (*Alden* v. *N. Y. C. R. R, Co.,* 26 N. Y. 102; *C. M. St. P. R. Co.* v. *Rose,* 112 U. S. 377.) Notwithstanding that the complaint states a joint contract the plaintiff is entitled to judgment against either defendant according as the evidence warrants a joint or only a several recovery. (*McIntosh* v. *Ensign,* 28 N. Y. 169; *Brumskill* v. *James,* 11 id. 294; *Montgomery Co. B'k* v. *Albany City B'k and B'k of State of N. Y.,* 7 id. 459, 465; *Loomis* v. *Rack,* 56 id. 462, 466.)

Earl, J. A point is made on behalf of the defendants that the plaintiffs cannot maintain this action on the ground that some of the seamen on the whaling vessels were to some extent joint owners with them of the oil. It is undoubtedly the general rule in this State that an action against a common carrier for the breach of his contract, or of his duty to carry must be brought in the name of the owner of the goods although the contract may have been made or the goods shipped by another. (*Greene* v. *Clark,* 12 N. Y. 343; *Krulder* v. *Ellison,* 47 id. 36.) The rule has, however, been much questioned and has some exceptions. (*Blanchard* v. *Page,* 8 Gray, 281; *Finn* v. *Western Railroad Corporation* 112 Mass. 524; *Arbuckle* v. *Thompson,* 37 Penn. St. 170.) Where the consignor, although not the general owner, has a lien upon or a special interest in the goods, and makes the contract and pays the consideration for their carriage, he may bring an action for the breach of the contract in his own name in order that he may protect his rights. Here these plaintiffs made this contract in their own names, and with their own money paid the agreed freight,

and they were both consignors and consignees. It does not appear what ownership if any in the oil the seamen had, nor does it appear what the relations between the plaintiffs and them were. For aught that appears the plaintiffs were under a special duty to deliver this oil in the city of New York, and had a special interest in the whole of the oil to protect. As they were in control of the oil and made the contract for its transportation, being both consignors and consignees, in the absence of proof to the contrary, it must be assumed that they had sufficient title and right to maintain this action and enforce their contract with the defendants; and in so holding it is believed that we are in conflict with no authority.

But the evidence does not show that the seamen were joint owners with the plaintiffs of the oil. It was simply testified that " they were interested in the oil," and that evidence was not sufficient to establish that they were either partners or joint owners with the plaintiffs. It is more reasonable to suppose, from such evidence, that they were simply interested in the proceeds of the oil, and such is believed to be the common arrangement between the owners of whaling vessels and their seamen, when the latter have an interest in the product fo the whaling voyage. (*Baxter* v. *Rodman*, 3 Pick. 435; *Grozier* v. *Atwood*, 4 id. 234; *Bishop* v. *Shepherd*, 23 id. 492.) We are, therefore, of opinion that the seamen were not necessary parties to the action.

The Panama Railroad Company was organized to construct, maintain and operate a railroad across the Isthmus, from Panama to Aspinwall; and the Pacific Mail Steamship Company was organized to navigate steamships on the Pacific and Atlantic Oceans. (Laws of 1848, chap. 266, and Laws of 1850, chap. 207.) It is not disputed that the Panama Railroad Company could receive freight at Panama and contract to carry it beyond its terminus through to the city of New York, and that the Pacific Mail Steamship Company could receive freight at the city of New York, and contract to carry it to Aspinwall and thence by the railroad to Panama.

It is the well settled law in this State that a carrying cor-

poration over a portion of a continuous line of transportation may contract to carry beyond the terminus of its route, and that such a contract is not *ultra vires*. ( *Weed* v. *Saratoga & Schenectady R. R. Co.*, 19 Wend. 534; *Wylde* v. *Northern R. R. Co.*, 53 N. Y. 156; *Root* v. *Great Western R. R. Co.*, 45 id. 524; *Condict* v. *Grand Trunk R. R. Co.*, 54 id. 500.) Such contracts have been upheld sometimes upon the ground of estoppel, and sometimes upon the ground that they were incident to the business for which the contracting corporation was organized. While the defendants admit that such contracts could be made, they contend that the Pacific Mail Steamship Company could not contract to receive goods away from its terminus and to transport them to such terminus over the route of another carrier, and thence transport them over its own route to their destination. That is, while they admit that the steamship company could receive goods at the city of New York and contract to carry them to Panama on the Pacific coast, they deny that it could receive goods at Panama and agree to transport them to the city of New York. We see no reason for distinguishing between the two kinds of contracts, and for holding that the company could make the one kind and not the other. If when it receives goods at New York for transportation to Panama it is engaged in business authorized by its charter, or incident to such business, then when it procures freight at Panama for transportation to Aspinwall and thence to New York it is also engaged in promoting the legitimate business for which it was organized. It thus procures freight for transportation upon its steamships, and the business it thus does at Panama and across the Isthmus is just as legitimate as it would be to establish agencies on the Pacific coast to solicit freight for transportation from Aspinwall to New York, or to contract with newspapers there to advertise the carrying of such freight. Cannot a railroad company take freight for transportation at a point a few rods from its depot? And if it may a few rods, why not a few miles? If it may have a depot for the receipt of freight one mile from its

terminus, why may it not have a depot fifteen or twenty miles therefrom, and transport the freight thence to its road by any means that it chooses to adopt? The Panama Railroad Company terminated on the Pacific coast at Panama, and there it owned lighters to go out into the ocean to take freight from vessels. If it could send its lighters out one mile, why could it not send them out several miles for the same purpose to some convenient port or roadstead? The main business of the steamship company between Aspinwall and New York was to transport passengers and freight which came from the Pacific coast, and instead of taking the passengers and freight at Aspinwall, why could it not take them at Panama? We see no reason for holding that it might not do so in the prosecution of its corporate business, and as incident thereto. Then again, if when the steamship company receives goods at New York under contract to carry them to Panama it is estopped from denying its authority and power to make the contract, why when it receives goods at Panama under contract to be carried to New York should it not be equally bound by estoppel?

We think, therefore, that it is clear upon principle and authority that both defendants were competent to enter into contract to carry this oil from Panama to New York. And as each was competent to contract alone it cannot be doubted that they were competent to make a joint contract to do it. They could even become partners in the transportation business between Panama and New York, and so far as we have discovered, the power of corporations thus to become joint carriers has never been denied but has frequently been recognized. (*Aigen* v. *Boston & Maine R. R. Co.*, 132 Mass. 423; *Block* v. *Fitchburg R. R. Co.*, 139 id. 308; *Gass* v. *N. Y., Providence & Boston R. R. Co.*, 99 N. Y. 220; *Hot Springs R. R. Co.* v. *Trippe*, 42 Ark. 465; *Ins. Co.* v. *R. R. Co.*, 104 U. S. 146; *Barter* v. *Wheeler*, 49 N. H. 9; *Wylde* v. *Northern R. R. Co.*, *supra;* Hutchinson on Carriers, § 160.) The right of a corporate carrier to go beyond its terminus to procure freight and passengers, and to trans-

port them to its terminus for carriage over its route, is not absolute and unqualified, but has some limitations. What those limitations are, it is not possible, in a general way to define. The New York Central and Hudson River Railroad Company, could not establish a line of steamers between Liverpool and New York to carry passengers and freight from Liverpool to New York, in order that it might secure the business of transporting such passengers and freight over its route to Buffalo; but it might run ferry boats from Staten Island, or from the New Jersey shore for the purpose of securing passengers and freight for transportation over its route. The right to go beyond its terminus to procure passengers and freight for transportation over its route, by a corporate carrier, must be exercised within reasonable limits and under such circumstances that it may fairly be said to be incident to its legitimate corporate business; and our holding is that the Pacific Mail Steamship Company, engaged in transportation upon both the Pacific and Atlantic Oceans, did not go beyond reasonable limits in contracting to take freight at Panama and transport it over the Panama Railroad for delivery to its steamships at Aspinwall, its main business being to take freight coming to it over that railroad.

The plaintiffs claim that the contract for the carriage of this oil was made in the city of New York between them and one Bellows, who was the vice-president and general agent of both defendants at that place, and that it was made by correspondence with Bellows and a personal interview had with him. On the other hand the defendants claim that the contract was contained in and evidenced by the bills of lading signed at Panama by one Corwin, who was the agent of both defendants at that point, which bills of lading expressly stipulated that the defendants should not be jointly liable for any loss or damage to the oil; that neither of them should be liable in any event for any loss or damage accruing upon the route of the other, nor accountable for leakage arising from improper or defective casks, nor for damages of any kind to articles perishable in their nature, nor for unavoidable detention and

delay. The trial judge submitted all the evidence bearing upon the contract to the jury, and instructed them to find whether it was made with Bellows as claimed by the plaintiffs, or whether it existed in the bills of lading as claimed by the defendants; and he also instructed them to find whether the contract was the joint contract of the defendants or the individual contract of the Pacific Mail Steamship Company; and he charged them that if they found the contract existed in the bills of lading they should render a verdict in favor of the defendants; but that if they found it was made with Bellows as claimed by the plaintiffs, and that it was the joint contract of both defendants, they should then render a verdict in favor of the plaintiffs against both defendants. The jury must, therefore, have found that the contract was made with Bellows as claimed by the plaintiffs, and that it was joint and the only further inquiry is whether there was any evidence to authorize their findings. * * *

The correspondence, together with what was said at the interview between Swift and Bellows, the joint agent of the defendants, made a special contract between the parties under which the plaintiffs were to deliver the oil at Panama, and the principals of Bellows were to receive the oil from plaintiffs' vessels, take it upon lighters to the docks and promptly carry it across the Isthmus to Aspinwall without delay, care for the oil upon the Isthmus and see to the coopering of the casks so that there would be no leakage there, and from Aspinwall transport it to the city of New York. And all this was to be done for the single price stipulated.

The contract, so far as it went, was complete. It was doubtless expected that bills of lading would be executed, but it could not have been expected that by them the contract so made should in any way be modified.

Under this contract, all the oil was delivered in January, 1873, from plaintiffs' vessels, and the only ground the defend-

---

*Note. — The omitted portion of the opinion is taken up with a discussion of the evidence as to the special contract claimed by plaintiffs.

ants have for claiming that this was not the contract under which the oil was transported, is the fact that two months afterward, on the 27th of March, 1873, the common agent of the defendants executed bills of lading, which were sent to the plaintiffs and received by them April seventh. By some delay on the isthmus, the oil did not reach Aspinwall and was not delivered on the steamships until the second or third of April. After the receipt of the bills of lading, the plaintiffs did not discover the peculiar stipulations contained in them, at variance with the contract which they had previously made. Upon the landing of the oil in New York, the loss of the oil from leakage was discovered, and the plaintiffs paid the stipulated freight, giving notice of their claim. Under the evidence, the main features of which we have alluded to, it was certainly competent for the jury to find that the oil was parted with to the defendants for transportation, and that the defendants entered upon the transportation thereof under the contract claimed by the plaintiffs. The defendants could not, therefore, abrogate or alter that contract by merely signing and mailing bills of lading, which did not reach the plaintiffs until after the oil had left Aspinwall, and much, if not all, the loss had occurred. There certainly was no conclusive evidence that the plaintiffs consented to accept the bills of lading in place of the prior contract, and that contract must, therefore, control. (*Bostwick* v. *Baltimore & Ohio R. R. Co.*, 45 N. Y. 712; *Guillaume* v. *Transportation Co.*, 100 N. Y. 491; *Wheeler* v. *N. B. & C. R. R. Co.*, 115 U. S. 29.)

It is clear that the plaintiffs did not understand that they were making several contracts for the transportation of their oil from Panama to New York, but they evidently supposed they were making a single contract with an agent who had authority to contract for the entire route. While the evidence is not conclusive, not even very satisfactory, that the defendants contracted jointly to carry this oil, yet we think there was enough to justify the jury in finding such a contract. Here was the steamship company engaged in transportation

both upon the Pacific and Atlantic Oceans, making contracts to carry from ports upon one ocean to ports upon the other, and such contracts could be performed only by carriage across the Isthmus over the Panama Railroad, and that railroad was engaged in transportation across the Isthmus of freight almost wholly to or from vessels of the steamship company. The two companies had common agents upon the Isthmus and in New York Goods were transported in all cases for a single through freight from ports on the Pacific to ports on the Atlantic, and the freight money, after deducting compensation for lighterage, was equally divided between the companies, and the same person was vice-president of both companies.

Taking into consideration all these matters, the situation of the two companies and all the circumstances surrounding them, and the methods of their business as disclosed in the evidence, it is not an improbable nor an unjustifiable inference that they were jointly engaged in business and jointly contracted with the plaintiffs.

If the contract was made by the correspondence and personal interview with Bellows, as claimed by the plaintiffs and found by the jury, then, if the defendants are not jointly liable for plaintiffs' loss, they are severally liable. The whole loss was apparently primarily due to unexplained, unjustifiable delay and carelessness upon the Isthmus while the oil was in the possession of the railroad company. For that delay and loss it is liable as a common carrier upon general principles. The steamship company made a special contract to transport the oil without delay from Panama to New York, and to care for it and cooper the casks upon the Isthmus, and it is liable for the loss by virtue of that special contract. Therefore the defendants are either severally or jointly liable for the loss; and whether they shall be held for the loss jointly or severally cannot be very important to them, because it is quite certain from their relations to each other that they will be able to adjust between themselves in a satisfactory manner the joint recovery. The objection to the joint recovery, therefore, appears to be merely technical and should not prevail

unless the judgment is plainly and clearly wrong, and such we think it is not.

A careful consideration of the whole case has, therefore, led us to the conclusion that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.