'108    203
a207s  172

## Frank E. Gould v. Magnolia Metal Co.

1. CONTRACTS—*Two Instruments Construed Together.*—A contract and a letter constituting one transaction may be construed together as one instrument in determining the intention of the parties.

2. SAME—*Parol Evidence Admissible to Explain the Meaning of a Letter Which is Part of a Contract.*—Parol evidence of a conversation referred to in a letter which is part of a contract, is admissible to explain the meaning of the letter.

3. INSTRUCTIONS—*Party Can Not Complain of Errors Where Similar Ones Occur in His Own Instructions.*—A party can not complain of an erroneous instruction where his own instructions contain the same fault.

Assumpsit.—Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed May 28, 1903.

IRA W. & C. C. BUELL, and P. H. BISHOP, attorneys for appellant.

WING & CHADBOURNE, attorneys for appellee; FRANKLIN B. HUSSEY, of counsel.

MR. JUSTICE WINDES delivered the opinion of the court.

On December 2, 1899, appellant made an agreement in writing with appellee, by which the latter, as first party, employed the former, who is called the second party, for the term of one year from December 1, 1899, the date of the agreement, as a salesman at a salary of $5,000 per annum, and in addition agreed to pay all actual and necessary traveling expenses of second party, he agreeing to devote his whole time and best efforts to the interests of appellee. The contract contains a number of provisions not material in this case, and the following :

"7. It is further understood and agreed that the party of the first part shall have the right to end this agreement at any time for neglect of duty, willful disobedience of instructions, or for any conduct on the part of the party of the second part that would reflect discredit upon the party of the first part, or be injurious to their business interests, or reflect discredit upon their methods of conducting business."

Appellee, claiming that appellant had violated said seventh clause of the agreement between them, on April 20, 1900, wrote him a letter discharging him from its employ, the same to take effect the following April 23d, and paid him in full for his services to that date. Appellant, claiming that he was wrongfully discharged, so notified appellee and held himself in readiness thereafter, until December 1, 1900, to carry out his part of the contract, and demanded of appellee that it do likewise. Appellee refusing to comply with this demand, appellant brought this suit to recover damages for his alleged wrongful discharge, a trial of which before the court and jury resulted in a verdict finding the issues for appellee and judgment thereon, from which this appeal is taken. The declaration consists of two special counts, alleging a breach of the written contract, one of which sets out the contract *in haec verba*, and also the common counts. The plea was the general issue, not verified.

The first and main contention of appellant is that the court erred in permitting evidence to the effect that the written agreement set out in the declaration was not all the contract between the parties, and that at the same time the written agreement declared on was executed appellant handed to Mr. E. C. Miller, appellee's vice-president and manager, the following letter:

"NEW YORK, Dec. 2, 1899.

MR. E. C. MILLER, Vice-Prest. Magnolia Metal Co., New York, N. Y.

MY DEAR SIR :—Inasmuch as certain matters of a private nature to me have been brought to your attention, and knowing that you consider same to be, if continued, detrimental not only to myself, but to the company, I wish to say that upon conditions of our renewing contract for my services I reiterate in full my conversation to you of yesterday. That as far as concerns me you will not in future have any occasion to refer to the matter again.

Yours very truly,
F. E. GOULD."

Also that the court erred in permitting oral testimony as to the conversation referred to in the above letter.

Gould v. Magnolia Metal Co.

The argument of the learned counsel of appellant in this regard is based, first, on section 34 of chapter 110, Practice Act, which, in so far as is claimed to be applicable, is as follows:

"No person shall be permitted to deny on trial, the execution or assignment of any instrument in writing, whether sealed or not, upon which any action may have been brought, or which shall be pleaded and set up by way of defense or set-off, or is admissible under the pleadings when a copy is filed, unless the person so denying the same shall, if defendant, verify his plea by affidavit, and if plaintiff, shall file his affidavit denying the execution or assignment of such instrument."

In our opinion this section of the statute has no application. The appellee did not undertake to deny the execution or assignment of the written · agreement between appellant and appellee declared on—only to show that it was not all the contract between them.

Second, appellant's counsel claim that the letter and oral evidence referred to were erroneously admitted, for the reason that the written contract set out in the declaration was complete in itself—neither uncertain nor ambiguous in its terms, and that the evidence admitted had the effect to add to, take from, vary or contradict the terms of the contract declared upon and offered in evidence. Authorities tending to support the claim are cited. The general rule is to the effect claimed, but we think the cases cited are not applicable to the facts of this case— rather relate to a single instrument or paper constituting an entire contract between the parties.

While there is a conflict in the evidence as to whether or not the contract declared upon and the letter offered in evidence were delivered and became operative at the same time and as one transaction, we are of opinion that the clear preponderance of the evidence is that they constitute one transaction, were delivered at the same time, and, in connection with the conversation testified to by appellee's witnesses as being the conversation referred to in said letter, constitute the contract between the parties to this

case.   This view is clearly supported by the authorities. Gardt v. Brown, 113 Ill. 478; Crandall v. Sorg, 198 Ill. 58; Denby v. Graff, 10 Brad. 195–9; Stacey v. Randall, 17 Ill. 467.

The conversation referred to in the letter was admissible as explanatory of the clause in the letter, viz., "I wish to say that upon conditions of our renewing contract for my services, I reiterate in full my conversation with you of yesterday." It makes clear the meaning of the letter, which was a part of the contract.   17th Am. & Eng. Enc. Law (2d Ed.), 23; Walker v. Schindel, 58 Md. 360–7; Millers' Ins. Co. v. Kinneard, 35 Ill. App. 105; Merchants D. Co. v. Furthmann, 47 Ill. App. 561; Bradshaw v. Combs, 102 Ill. 433; Cullmans v. Lindsay, 114 Pa. St. 166–70.

In the Bradshaw case, *supra*, the court on this subject say:

" Where parties reduce their agreement to writing they can not be allowed to vary its terms by parol; but where it is evident that the agreement is not reduced to writing, but only a part of it, and where that part reduced to writing is merely a partial execution of a part of an entire agreement between the parties, the whole of the agreement may be proven."

In the Furthmann case, *supra*, the court holds that parol evidence is admissible to vary the terms of a written contract where an oral agreement exists " as to any matter on which the document is silent, and which is not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them."

. The letter, as explained by the conversation referred to, was, in our opinion, clearly intended to be a part of the contract between the parties, and they did not intend that the written agreement declared on should be the complete and final contract between them; in any event their intention was, the written agreement was to be construed in connection with the letter and the conversation referred to therein.   In fact, appellant, according to the clear weight of the evidence, asked that the matter referred to in the letter, as explained by the conversation, should not be put

into the formal written contract, but that it should take the form of the letter, which was assented to by appellee's representative.

It is claimed by appellant's counsel that the court erred in permitting appellant to be cross-examined with reference to his marital and domestic relations, his relations with one Bessie Van Hansen, and her general reputation for chastity, her treatment for a certain disease by one Dr. Pudor, the reputation for chastity of her sister, and concerning a letter received by appellant, signed "Emma." While perhaps in strictness all these matters were not proper in cross-examination of appellant, we think they do not constitute any cause for reversal. Great latitude is allowed in the cross-examination of a party to a suit, and it is largely within the discretion of the trial court. Appellant in his direct evidence in effect testified that he was wrongfully discharged by appellee, and held himself in readiness to comply with his contract from the date of his discharge up to the end of the term, and as a part of his direct examination he identified, and there was offered in evidence, a letter of appellee to appellant which quotes in full said clause seven of the contract, and contains, among others, the following statements, to-wit:

"Since you left Boston and went out to Chicago, we have learned many surprising facts concerning your conduct of our business at Boston, and your private life while there. We have received information from reliable sources that you neglected our business while at Boston; that you gave offense to customers, and that you passed much time in company with disreputable women, and we are filled with regret that your solemn agreement made with our company, when your new contract was being considered, namely, that you would drop your relations with the woman whom you formerly associated with in Pittsburg, and which was the cause of your removal from our office there, at the request of our agents, has been violated, and that this woman was brought by you to Boston, and our friends introduced to her by you, and that you have taken her to Portland and elsewhere, and have maintained the same relations exactly with this person that you formerly did at Pittsburg."

This letter also states that appellant's conduct had been injurious to appellee's business interests, had reflected much discredit on appellee, and that in pursuance of said clause seven appellee dispensed with appellant's services. We think, in view of this evidence, the cross-examination of appellant upon the several matters referred to was not beyond the bounds of the court's discretion.

Further claims are made that the court erred in allowing other evidence pertaining to the same matters about which appellant was cross-examined, and concerning the relations between Bessie Van Hansen's sister and a man named Whitelsey; also concerning a letter signed by a person known as "Emma," received by appellant. While perhaps some of these matters have not a direct bearing upon the contract in question, and appellee's right under the contract to discharge appellant, we are of opinion, after a careful consideration of all the evidence, especially the seventh provision of the contract, the letter of appellee discharging appellant, hereinabove referred to, and the conversation between Miller, appellee's vice-president, and appellant, referred to in the letter of December 2, 1899, signed by Gould and handed to Miller, in which conversation appellant's marital and domestic relations and his relations with Bessie Van Hansen were referred to and discussed between appellant and Miller, as well as Miss Van Hansen's bad character and that of her sister, that these matters were proper subjects of inquiry in the case, and that the court did not err in permitting the evidence to go to the jury. Some of it, which it seems unnecessary to state in detail, viz., that concerning the disease for which Dr. Pudor treated Bessie Van Hansen, that appellant went with Miss Van Hansen to the doctor and paid the doctor's bills, that appellant also paid her hotel bills and associated with her, and that appellant received the letter signed "Emma," the purport of which is too vile to be stated, and the evidence relating to this letter and appellant's relations with this person, who was evidently a lewd woman, tends to show that appellant violated said clause seven of his agree-

Gould v. Magnolia Metal Co.

ment in the renewal of his associations with Miss Van Hansen and other lewd women, by reason of which appellee was justified in discharging him. It seems clear, in the light of appellant's said letter and the conversation referred to therein, as testified to by Miller, that the evidence last above referred to was competent as tending to show that appellant had violated that part of clause seven of the agreement which gives appellee the right to end the agreement for any conduct of appellant which would " be injurious to their (its) business interests."

Appellant claims the court erred in refusing to permit appellee's witness Drew, to answer certain questions asked him on cross-examination, and in not permitting appellant to testify on rebuttal as to certain evidence given by appellee's witness Oldfield. From an examination of the record as to both these matters, we are of opinion that they are not of sufficient importance to require discussion, and that the court did not err in its rulings in the respects claimed.

It is said that the court erred in not permitting appellant to read to the jury certain answers to questions asked by appellee in the depositions of appellee's witnesses, Pudor and Chaffee, parts of which depositions were read on the hearing. The only question and answer in this connection to which attention is directed, or which appears in the abstract, is in the re-direct examination, and relates to a subject as to which the witness Pudor was interrogated on his cross-examination by appellant's counsel, and excluded by the court for the reason that the question called for hearsay evidence. We think the ruling is correct, both because it is apparent from the evidence and the question itself that the question calls for hearsay as well as a conclusion of the witness about a matter of fact. The language used in the question and answer is not such that it should be here stated. It is said the court erred in giving appellee's first, fourth, sixth, ninth and tenth instructions, because, among other objections stated, it is claimed they submit to the jury the decision of a question of law, viz: As to what constituted adequate legal grounds for appel-

lant's discharge by appellee. If it be conceded that these instructions are faulty in the respect claimed, which it is unnecessary to decide, appellant can not complain, because his first instruction given has the same fault. Judy v. Sterrett, 153 Ill. 94; R. R. Co. v. Harrington, 192 Ill. 10–24, and cases cited.

Other criticisms are made of said first and sixth instructions, all of which we have considered, and think none of them tenable. It is said that the first instruction assumes that there were a number of adequate legal grounds for appellant's discharge. We think not. It in effect directs the jury to base its finding in this regard on the evidence. It is claimed, among other objections to the sixth instruction, that it is not justified by the evidence, and directs the jury to consider evidence other than the written contract declared upon. It clearly appears from the record that the evidence justifies this instruction, and what has been said shows it was proper for the jury, in determining what the contract between the parties was, to consider the letter of December 2, 1899, and the conversation between appellant and Miller referred to therein. This instruction does not give the jury a wider latitude in this regard, as is claimed by appellant's counsel.

The seventh of appellee's instructions is criticised as being "involved rhetorically," vicious in every line, and that it is a peremptory instruction to find for appellee. It is, viz.:

" The court instructs you that if you believe from the evidence in this case that after the making of the contract of December 1, 1899, between the plaintiff and the defendant, which has been introduced in evidence, the plaintiff entered into the employ of the defendant, in pursuance of said contract, and that during the term of his employment under said contract and before his discharge the plaintiff neglected his work and duties under the said contract of employment, or that the plaintiff was guilty of conduct which would reflect discredit upon the defendant, or was guilty of conduct which would be injurious to the business interests of the defendant, or was guilty ofc onduct which would reflect discredit upon defendant's methods of conducting business, then in that case you are instructed that these facts, or any

of them, if you find such facts, or any of them, to have been proven by the evidence, constituted sufficient grounds for the discharge of the plaintiff by the defendant, and your verdict should be for the defendant."

We think the instruction is not justly subject to either of the above criticisms of counsel.

Complaint is also made of the eighth, ninth and tenth instructions given for appellee. They all relate to the question of damages, and are therefore not prejudicial to appellant, as the verdict is against him on the question of appellee's alleged liability.

Other criticisms of counsel of appellee's third, fifth and sixth instructions relate, in the main, to the letter of December 2, 1899, or to appellant's association with Bessie Van Hansen, which are sufficiently answered by what has been said as to these matters.

After the most careful consideration of the whole record and arguments of counsel, we think the judgment does substantial justice, and it is affirmed.