# *ATCHISON, T. & S. F. RY. CO. v. ROBINSON.

No. 2015.  Opinion Filed October 23, 1912.

Rehearing Denied December 12, 1912.

(129 Pac. 20.)

1.  **PLEADING**—Judgment on Pleadings—Carriage of Live Stock—Actions for Injuries. Plaintiff sued for damages done to a shipment of race horses, alleging shipment to have been made under a definite verbal contract, charging gross negligence and praying for full amount of damages. Defendant answered by general

---

* Appealed to the United States Supreme Court.

denial and by pleading a written contract which limited its lia-
bility to the value therein named, and by the further allegation
that the written contract was the only one made between the
parties. Plaintiff's reply was in effect an unverified general de-
nial of new matter. Held, the overruling of defendant's motion
for judgment on the pleadings because of the unverified reply
was not error.

The issues whether the shipment was made under a verbal
agreement and whether defendant was guilty of gross negligence
were joined by defendant's general denial, and plaintiff had the
right to have such issues determined and was entitled to any
evidence relevant, competent, and material to a determination
of same, regardless of the written contract, and regardless of
the fact that a determination of such issues had the effect of
rendering the provisions of the written contract not binding.

2.    CARRIERS — Carriage of Live Stock — Notice of Injury.
Where a shipment of live stock consists of race horses shipped
for the purpose of being entered in certain races, and the carrier
has notice of the class to which the stock belongs and the pur-
pose for which it is shipped, and the agent of the carrier at the
destination of the shipment is notified that some of the stock
had been injured, and such agent goes to the stables where such
injured stock is kept and sees same and has ample opportunities
to ascertain the extent of the injuries, held, this is a substantial
compliance with the provisions of the shipping contract requiring
notice of injury to be given before the stock is removed or
slaughtered or mingled with other stock.

3.    SAME—Contracts. Where a shipment of live stock is made under a
verbal contract, and where every move made, every step taken to-
ward a shipment, up to and including a complete consignment and
surrender of control by the shipper, the starting in transit of
the shipment and the assumption of liability for negligence by
the carrier, is all under and pursuant to such parol agreement,
and after this a printed shipping contract is presented to the
shipper to sign, he has the right to assume that it embodies the
terms of the verbal agreement, and the carrier will not be
permitted to escape liabilities accruing to the shipper under
the verbal agreement by reason of certain provisions in the
written contract at variance with the parol contract, unless the
shipper's attention has been called to such provisions and fair
opportunity given him to assent to same.

(Syllabus by Harrison, C.)

*Error from District Court, Lincoln County.*

*John J. Carney, Assigned Judge.*

Action by C. E. Robinson against the Atchison, Topeka &
Santa Fe Railway Company. Judgment for plaintiff, and
defendant brings error. Affirmed.

See, also, 29 Okla. 706, 119 Pac. 238.

This action was begun June 29, 1908, in the district court of Lincoln county, by C. E. Robinson against the Atchison, Topeka & Santa Fe Railway Company for damages done to a certain race mare, Nancy Alden, shipped with some other race horses from Kansas City, Mo., to Lawrence, Kan., in September, 1907. The substance of plaintiff's petition is: In September, 1907, plaintiff had the horses in question in Kansas City, and on said day called up the agent of the railway company at Kansas City and by phone informed him that he (Robinson) had some race horses which he desired to ship to Lawrence, Kan., in time for the races on the next day. The agent informed him that such shipment could be made and that, if the horses could be loaded between four and six o'clock of that afternoon, they would be taken by a fast freight, the "Red Ball," which made no stops for local freight on the way and would reach Lawrence about twelve o'clock that night. This being satisfactory to Robinson, it was agreed between him and the agent that the shipment should be made by that train. Whereupon the agent instructed him where to bring the horses and informed him that a car would be placed there to receive them. Pursuant to this agreement, the horses were taken to the place designated by the agent and loaded into the car between five and six o'clock of that afternoon. After being loaded, the car was closed and tagged "Red Ball" to designate to the crew that it should go with the Red Ball train on that evening. Some time thereafter it was pulled into the company's yards, but was overlooked or neglected by the Red Ball crew and left in the yards for the night. The excuse given by the crew was that they had forgotten it. During the night it was carelessly switched and bumped around in the yards by the local freight in making up its train, and some time on the following morning was started with the local freight to Lawrence, Kan., arriving there about two p. m. of the next day, too late for the races on that day, and with the mare Nancy Alden badly damaged and permanently injured from the careless and grossly negligent manner in which the car had been handled. The railway company answered by general denial and by plead-

ing a written contract alleged to have been fairly and for a valid consideration entered into, and to have been the *only* contract made between the shipper and the carrier. Plaintiff replied, denying the allegations of new matter in the answer; denying that the written contract was entered into in good faith, and that it was the *only* contract made between the parties, and in effect reaffirming that the verbal contract made between the parties was the one under which the shipment was made. The trial resulted in a verdict in favor of Robinson for $1,500, upon which judgment was rendered, and from which judgment the railway company appeals.

*Cottingham & Bledsoe, Charles H. Woods,* and *George M. Green,* for plaintiff in error.

*H. H. Smith* and *Rittenhouse & Rittenhouse,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). Numerous errors are assigned by appellant, but all are disposed of under the two general propositions, viz.: First, whether the railway company was entitled to judgment on the pleadings, having set up a written contract the execution of which was not denied under oath; second, were the provisions in the written contract valid and were they binding on the shipper?

As to the first proposition, the plaintiff did not rely on a written contract of any character, nor did he sue for violations of the terms of a written contract, but alleged the shipment to have been made under a definite verbal contract in which no reference was made to the freight rate or limitation of liabilities, and sought recovery on the grounds of gross negligence of the company in the manner of handling the shipment. This presented the material issues to be tried, a determination of which in favor of plaintiff would entitle him to recover and which were joined by defendant in its general denial of the allegations in the petition. The plaintiff therefore was entitled to have these issues tried and determined, and in the trial of same was entitled to all the competent, material evidence at his command in support of his

view of such issues. Therefore the setting up of a written contract by defendant did not preclude the plaintiff from his right to have such issues determined, nor entitle defendant to judgment on the pleadings, notwithstanding plaintiff had failed to deny the execution of the contract under oath. If plaintiff had stated a cause of action, which in our opinion was done, he had a right to have same determined upon the theory he had chosen —upon the grounds of his own choice. And, not relying on a written contract, not suing on a written contract, but claiming the shipment to have been made under a verbal agreement, and relying for recovery on the carrier's common-law liability for negligence, he should not be required to abandon his chosen grounds and to try his case upon a different theory by the setting up of a written contract, unless such contract constituted a *prima facie* defense to his action. Whether it did or not depended upon the question that it was the *only* contract, which question was one of fact and was completely answered by a determination of the issues tendered in the petition, "that the shipment was made under a *verbal* contract." Hence, the decisive issues tendered by both the petition and the written contract being disposed of by a determination of the issues presented by the petition, it is immaterial whether the execution of the written contract be denied under oath or not, or whether or not plaintiff's reply was verified. It was held by this court in *Flesher v. Callahan,* 32 Okla. 283, 122 Pac. 489, that section 5648, Comp. Laws 1909, "providing that allegations of the execution of written instruments and indorsements thereon shall be taken as true unless the denial thereof be verified by affidavit, requires the verification of the denial of the execution only." The execution of the instrument in question here was not in issue. Therefore it was not error to overrule defendant's motion for judgment on the pleadings.

This case is clearly distinguishable from *St. L. & S. F. Ry. Co. v. Cake,* 25 Okla. 227, 105 Pac. 322, and *St. L. & S. F. R. Co. v. Phillips,* 17 Okla. 264, 87 Pac. 470. In those cases a wholly different fundamental principle of pleading was involved. In each of those cases the plaintiff sued for a violation of a written

contract and relied on the contract for recovery, and in each case the contract relied upon showed that plaintiff had not complied with the conditions precedent to recovery, and that, in the absence of a verified denial or plea of waiver of such conditions, plaintiff was not entitled to recover. The case at bar rests on a different principle of pleading for the reasons herein stated.

The same question of pleading was decided in the case of *C., R. I. & P. Ry. Co. v. Spears,* 31 Okla. 469, 122 Pac. 228, wherein this court, speaking through Justice Williams, says:

"The defendants having pleaded the contracts, and the same being admitted because no reply was filed, still they were not entitled to have judgment rendered in their favor upon the pleadings, because of the issue joined by the general issue as to the death of the four head of cattle and the value thereof."

In the second proposition two material provisions of the written contract are involved, viz., the provision that notice of the damage be given by the shipper to the carrier within a prescribed time after the damage is discovered, and the provision which limits the carrier's liability to the valuation placed on the stock in the contract. The contract provided that written notice of any damage sustained by the stock should be given to the company before the stock should be slaughtered or intermingled with other stock, and the further provision that the company should not be liable in any amount in excess of the values printed in the contract, which are as follows:

"Each horse or pony (gelding, mare or stallion), mule or jack, $100.00. Each ox, bull or steer, $50.00. Each cow, $30.00. Each calf, $10.00. Each hog, $10.00. Each sheep or goat, $3.00."

The record shows that the provisions for notice were substantially complied with. The injured animal was not intended for slaughter nor to be intermingled with and put on the market in bulk with other stock. She was a racing animal, shipped for that specific purpose, and the railroad had notice of the class to which she belonged and the purpose for which she was shipped; and when the shipment reached its destination and it was discovered that the animal, Nancy Alden, was injured, the company was notified of same, and the agent of the company went to the stable where she was kept and saw her and had ample

opportunity to examine her. The evidence, however, showed that it was impossible at the time to ascertain the extent of her injuries. Later, it was ascertained that she was rendered useless for racing purposes. The company, having actual notice of the injury, had ample opportunity to examine the extent thereof, and, under the circumstances of this case, we think the notice which the company had was a substantial compliance with the "notice provisions" of the contract.

The record in this case clearly shows negligence on the part of the railway company. Hence the remaining question is: Was the liability of the company limited to the value fixed in the written contract? A determination of this question depends upon whether the value was fixed by the shipper and whether such value was fairly agreed upon between the shipper and the agent of the carrier. This question may properly be determined without the necessity of construing the federal statute, known as the "Hepburn Act."

The question here is not a question of law as to whether the carrier had authority to limit its common-law liability to a value fixed by the shipper and fairly agreed upon between the shipper and carrier, but is a question of fact whether such value was fixed by the shipper and whether it was fairly agreed upon between the parties. If, as a matter of fact, such value was not fixed by the shipper and was not fairly agreed upon by the parties, but was arbitrarily printed in the contract by the carrier without the knowledge or even the implied assent of the shipper, then the carrier's liability is not limited to such value and there is no necessity for a construction of the federal act. Therefore the issue, being one of fact, was properly determinable by the jury, from the evidence, and we think the verdict was fairly and reasonably supported by the testimony submitted. But it is contended by the company that the court erred in admitting testimony which tended to vary the terms of the written contract. If there had been no other issue to be tried, except the validity of the written contract, the contention might be well taken. But there were other issues independent of the written contract and decisive of plaintiff's right of recovery, on which plaintiff relied

and had a right to have determined and a right to introduce any testimony relevant, competent, and material to a correct determination of such issues. And if the evidence offered was competent and material to a determination of such issues, and was offered for such purpose, it was not error to admit same although it may have had the consequent effect of varying the terms of the written contract; for, as stated in the discussion of the first proposition, plaintiff had tendered the issue "that the shipment was made under a verbal agreement and that the company was guilty of gross negligence" and relied on these grounds for recovery. The defendant, by general denial, joined these issues, thereby ǀgiving plaintiff the right to have them determined, although the conclusion may have followed, as a logical sequence, that the terms of the written contract were not fairly entered into. *C., R. I. & P. Ry. Co. v. Spears, supra,* is in point on the question of admission of evidence.

As to whether the printed contract superseded all others, or whether the verbal agreement ·was merged in the printed contract, the evidence was conclusive that a definite and complete agreement in reference to the shipment was made over the phone by the shipper and the agent of the carrier without.any mention or reference to the rate, the value of the stock, further than that it was racing stock, or to any limitation of liability or any mention of the fact that a written or printed contract would be required. The testimony offered by defendant substantiates this view and corroborates the testimony of plaintiff on those points. He also shows clearly that the stock was loaded, the car closed and tagged "Red Ball," the shipment fully delivered to the carrier and control of same completely surrendered by the shipper and that after the car had been moved from the place of loading and started in transit all pursuant to the verbal agreement, some two hours thereafter, the agent of the company presented to the shipper the printed contract, without calling his attention to its special provisions and without informing him that it contained provisions directly at variance with the terms of the verbal agreement, and without giving him an opportunity to examine its contents and exercise his right of choice.

Under these circumstances, having made a definite and complete agreement as to the shipment, without mention of rate or limitation of liability, having surrendered certain of his rights, and certain rights having accrued to him under such agreement, it was reasonable for him to assume that the printed contract presented to him under such circumstances contained no provisions which would take away the rights already accrued. *A. T. & S. F. Ry. Co. v. Dill*, 48 Kan. 210, 29 Pac. 148; *K. P. Ry. Co. v. Reynolds*, 17 Kan. 251; *Railway Co. v. Lockwood*, 17 Wall. 367, 21 L. Ed. 627; *Hart v. Railroad Co.*, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; *Bostwick v. Baltimore & Ohio Ry. Co.*, 45 N. Y. 712; *Swift v. Pacific Mail & Steamship Co.*, 106 N. Y. 206, 12 N. E. 583; *M., K. & T. Ry. Co. v. Withers*, 16 Tex. Civ. App. 506, 40 S. W. 1073; *St. L. & S. F. R. Co. v. Gorman*, 79 Kan. 643, 100 Pac. 647, 28 L. R. A. (N. S.) 637; *Louisville, etc., R. Co. v. Craycraft*, 12 Ind. App. 203, 39 N. E. 523; *Gulf Ry. Co. v. Wood* (Tex. Civ. App.) 30 S. W. 715; *Louisville, etc., Ry. Co. v. Meyer*, 78 Ala. 597; *Strohn v. Detroit, etc., Ry. Co.*, 21 Wis. 554, 94 Am. Dec. 564.

In *Louisville, etc., Ry. Co. v. Craycraft, supra*, it was held:

"Where the shipper loads his goods under a parol contract, it will govern, and his right of recovery will not be limited by a written contract handed to him just as they are being carried away."

In *Strohn v. Detroit Ry. Co., supra*, it was held:

"Having previously entered into a special verbal agreement, he may rightfully assume, in the absence of notice to that effect, that it is embodied in the paper or receipt, or at least that the receipt contains nothing contrary to it. It is in the nature of a direct fraud or cheat for the company or its agents, after having entered into a verbal agreement, thus wrongfully to insert a contract of an entirely different character, and present it to the party without directing his attention expressly to it and procuring his assent. It is no answer for the company, in such a case, to say that the other party should have been more diligent and watchful, and should have detected the fraud. So long as he is ignorant of the new conditions, and does not assent to them, the contract in writing is not consummated, and parol evidence may be received."

In *Bostwick v. Baltimore & Ohio Ry. Co., supra,* the court held:

"The verbal agreement had been acted upon, and under it the plaintiff had parted with all control over his goods. The rule that prior negotiations are merged in a subsequent written contract does not apply to such a case as this. If the plaintiff had expressly assented to the terms of the bill of lading subsequently delivered to him, such assent would operate as a change of the terms of the contract originally made, and under which he had parted with his property. But after the verbal agreement had been consummated and rights had accrued under it, the mere receipt of the bill of lading, inadvertently omitting to examine the printed conditions, was not sufficient to conclude the plaintiff from showing what the actual agreement was under which the goods had been shipped."

In *M., K. & T. Ry. Co. v. Withers, supra,* in the syllabus the court said:

"After plaintiff's cattle had been loaded on defendant's cars for shipment under a verbal contract, and the cars closed and sealed, defendant's agent presented a written contract, binding plaintiff to do certain acts, not required by the oral agreement, as a condition precedent to recovery in case of damage. Plaintiff had not time to read the contract before the train started but, supposing it was a pass for a man to go with the cattle, signed it. *Held,* that the verbal contract controlled the shipment."

Now, in the case at bar, up to and including a complete consignment and surrender of control of stock by the shipper, the starting of the shipment in transit and the assumption of liability for negligence by the carrier, every move made, every step taken toward the shipment, was under and pursuant to a parol contract. Under these circumstances the shipper had the right to assume that his stock would not be grossly misused and to act on the faith thus inspired and rely on the rights thereby accrued to him, and the carrier will not be permitted to take away those rights and relieve itself of the liability thus incurred, without having given him a fair opportunity to assent thereto.

The record discloses that such opportunity was not given. Therefore the verbal contract must control. There being no agreement in the verbal contract as to the extent or limitations of liability, the carrier is held to its common-law liability for

negligence.  There is no controversy as to the value of the animal, the extent of the injuries, nor the damages thereby sustained.  The allegation of negligence being fairly sustained by the evidence, we see no reason why the verdict should be set aside.

The judgment should, therefore, be affirmed.

By the Court:  It is so ordered.