### 6031.  NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY *v.* TRUITT COMPANY.

1. It is now well settled that the effect of the act of Congress of June 29, 1906, known as the Carmack amendment to the Hepburn act (34 Stat. 593, c. 3591, § 7, U. S. Comp. Stat. 1913, p. 1307, § 8592), was to give to the Federal jurisdiction control over interstate commerce, and to make supreme the Federal legislation regulating liability for property transported by common carriers in interstate commerce; and it is also well settled that a carrier may, by a fair, just, open, and reasonable agreement, limit the amount recoverable by a shipper, in case of loss or damage to an agreed value fixed for the purpose of obtaining the lower of two rates of charges, according to the amount of the risk. Adams Express Co. *v.* Croninger, 226 U. S. 491-513 (33 Sup. Ct. 148, 57 L. ed. 314, 44 L. R. A. (N. S.) 257).

2. Proof of delivery of an interstate shipment to the initial carrier, and of a failure to deliver it to the consignee, raises a presumption of negligence, so as to give rise to the liability imposed by the Carmack amendment, supra, for loss or damage caused by the initial carrier or by any other carrier in the chain of transportation, and casts upon the initial carrier the burden of proving that the loss resulted from some cause for which the initial carrier was not responsible in law or by contract.

3. The jury were authorized to infer, from the evidence, that the death of one of the mules included in the shipment, for which damages were

sought by the plaintiff, was brought about by negligence on the part of the carrier, and did not result on account of any of the excepted causes named in the contract of shipment.

4. Where a carrier has converted property intrusted to him for transportation, he will be deemed to have thereby abandoned the contract of shipment, and can not thereafter insist on the stipulation therein that his liability shall be limited to a fixed sum at which the goods are valued; nor can the carrier insist upon the binding effect of such a stipulation, where the negligence which occasioned the loss was wanton or wilful.

5. Under the Carmack amendment, a carrier could by contract require an action against it to be brought within a reasonable stated time. Missouri, Kansas & Texas Railway Co. v. Harriman, 227 U. S. 657-673 (33 Sup. Ct. 397, 57 L. ed. 690). The act of March 4, 1915, (c. 176, 38 Stat. 1196), which forbids carriers to compel notice of claims in less than 90 days, their filing in less than four months, or the institution of suit within 2 years, has no application to the present case, which arose before that act was adopted. "A carrier who, by conversion of property which the carrier received for transportation, abandons the contract of carriage, can not insist upon a stipulation in the bill of lading that claims for loss or damage must be made within a specified time and in writing, to the carrier's agent at the point of delivery." *Georgia, Florida & Alabama Railway Co.* v. *Blish Milling Co.*, 15 *Ga. App.* 142 (82 S. E. 784).

(a) The jury found that the carrier had abandoned the contract of carriage as to the three mules for which inferior mules were substituted.

(b) In the absence of any express ruling from the Supreme Court of the United States to the contrary, the agent of the terminal carrier, who was the agent of the initial carrier, authorized to deliver the shipment which it contracted to forward, was authorized to bind the initial carrier by any agreement coming properly within the scope of his duties in connection with the shipment, and a waiver on his part of the provisions in the contract requiring that notice of claims of loss should be in writing was therefore valid and binding. See *Louisville & Nashville Railroad Co.* v. *Tharpe*, 11 *Ga. App.* 465 (3), 470 (75 S. E. 677).

6. There was no substantial merit in any of the errors complained of, the evidence sufficiently supported the verdict, and the court did not err in overruling the motion for a new trial.

DECIDED SEPTEMBER 25, 1915.

Attachment; from city court of LaGrange—Judge Harwell. October 2, 1914.

*Tye, Peeples & Jordan, E. T. Moon,* for plaintiff in error.
*Hatton Lovejoy,* contra.

WADE, J. At the former appearance of this case in this court (14 *Ga. App.* 767, 82 S. E. 465), a full statement of the facts adduced at the trial then under review was made, and since the evi-

dence brought forth at the trial now under consideration was not materially different, except on one or two points, we deem it unnecessary to make any lengthy statement in regard thereto. It may be said that the evidence adduced at the trial now under review brings out more clearly and positively, and without contradiction on the part of any witness, that the mule which died in Nashville after its delivery to the carrier was a sound, young, and strong mule at 3:45 p. m. on the day it was loaded by the defendant in its car for shipment, and that before 6 p. m. thereafter on the same day, when the remaining mules were unloaded from the car (after the car had been moved a short distance and back again), this mule was discovered to be lying down in a helpless condition on the floor of the car. This evidence tended to negative a defense that this mule may have come to its death on account of the excepted causes covered by the contract of shipment.

Any specific evidence bearing precisely on points herein discussed will be referred to in the respective divisions of this opinion. It may be said, by way of preface, that the law governing this case, as declared in the previous decision of this court, is of course the law of the case, and this is said without meaning to intimate that the court even desires or thinks it necessary to recede in any important particular from any of the rulings therein laid down.

All the points involved that we consider it necessary to pass on explicitly are covered by the headnotes; but to some slight extent we consider it proper to enlarge upon some of the rulings therein enunciated.

In the case from which the following quotation is taken, Justice Lamar appears to have clearly recognized the doctrine, declared in the second headnote above. The holding of the United States Supreme Court on the precise point needs no discussion, and is as follows: In an interstate shipment, "when the holders of the bills of lading proved the goods had not been delivered to the consignee, the presumption arose that they had been lost by reason of the negligence of the carrier or its agents. The burden of proof that the loss resulted from some cause for which the initial carrier was not responsible in law or by contract was then cast upon the carrier. The plaintiffs were not obliged both to prove their case and to disprove the existence of a defense. The carrier and its agents, having received possession of the goods, were charged with the duty

of delivering them, or explaining why that had not been done. This must be so, because carriers not only have better means, but often the only means, of making such proof. If the failure to deliver was due to the act of God, the public enemy, or some cause against which it might lawfully contract, it was for the carrier to bring itself within such exception." Galveston &c. Ry. Co. v. Wallace, 223 U. S. 481, 492 (32 Sup. Ct. 205, 56 L. ed. 516-523).

It has been generally held that the effect of the Carmack amendment is to regard the initial carrier, engaged in interstate commerce and receiving property for transportation from a point in one State to a point in another, as having contracted for through carriage to the point of destination, using the lines of connecting carriers as its agents. Atlantic Coast Line R. Co. v. Riverside Mills, 219 U. S. 186 (31 Sup. Ct. 164, 55 L. ed. 167, 31 L. R. A. (N. S.) 7); Louisville & N. R. Co. v. Scott, 219 U. S. 209 (55 L. ed. 183, 31 Sup. Ct. 171); *Southern Ry. Co.* v. *Bennett,* ante, 162 (86 S. E. 418), Gibson v. Little Rock &c. R. Co., 93 Ark. 439 (124 S. W. 1033); Blackmer &c. Pipe Co. v. Mobile &c. R. Co., 137 Mo. App. 479 (119 S. W. 1); Travis v. Wells, 79 N. J. L. 83 (74 Atl. 444); Earnest v. Delaware &c. R. Co., 149 App. D. 330 (134 N. Y. Supp. 323); Greenwald v. Weir, 130 App. Div. 696 (115 N. Y. Supp. 311); Missouri &c. R. Co. v. Stark Grain Co., 103 Tex. 542 (131 S. W. 412), modifying—Tex. Civ. App.— (120 S. W. 1146).

The initial carrier can not limit its liability in a through bill of lading to its own lines. Southern P. Co. v. Meadors,—Tex. Civ. App.— (129 S. W. 170), reversed on other grounds in 104 Tex. 469 (140 S. W. 427).

Under the contract of affreightment in the instant case, the shipper assumed "all risk of injury which the animals, or any of them, may receive in consequence of either or any of them being wild, unruly, or weak, and of the escape of any portion of said stock, or by maiming each other or themselves, or in consequence of heat or suffocation, or other ill effects of being crowded in the cars, or on account of being injured by the burning of hay, straw, or other material used by the owner for feeding or bedding the stock, or otherwise."

The undisputed testimony showed that the mule, for the death of which the plaintiff sued, was a first-class mule, young, sound,

and strong, when loaded for shipment by the defendant at 3:45 p. m. on November 28, 1910; that the car containing this mule and 28 others was moved a short distance from a stock-yard track and attached to a train to begin its journey to destination; that on discovery a very short time thereafter (probably within two hours) that this mule was "down" in the car, lying on the floor of the car, the car was returned to the train-yards, and there the remaining mules were unloaded at 6 p. m. the same day, and this mule allowed to remain in the open car in extremely cold weather all night. The mule presented no abrasions or other evidence of external injury when examined by a veterinary surgeon at 9 o'clock on the same night, but appeared to be partially paralyzed, and on his advice it was not removed from the car that night, though the veterinary surgeon testified that the mule had struggled considerably and was quite warm and somewhat exhausted, and the night was cold and damp, and that where a mule was heated from struggling and was exposed to cold, pneumonia was liable to develop, though no direct evidence showed that the mule died from pneumonia. There was no positive evidence to show that the injury which brought about the death of the mule the following day resulted from any of the causes specially excepted in the contract of shipment. The railroad foreman who had charge of the movement of the car containing the mule testified that the car was "handled in such a way as not to jerk the mule down in it," and said "I am testifying as to what I definitely remember, not as to general custom;" but his further testimony was in conflict with this, as he said he knew nothing about this particular car, except by refreshing his memory from examining certain books of record, and the jury had a right to conclude, from his evidence as a whole, that he had no actual *personal* knowledge of the circumstances connected with the movement of this car, but was testifying to a conclusion merely, when he stated that the car moved in a particular manner. In view of the presumption against the carrier, since there was nothing whatever to show that the death of the mule resulted from its inherent characteristics or from weakness, or from the inherent characteristics of the remaining mules in the same car, or from any other excepted cause, and taking into consideration the short time that elapsed between the delivery of a sound mule for shipment and its discovery in a paralyzed condition, to-

gether with some evidence that the floor of the car was negligently permitted by the defendant to be in a dangerously slippery condition (which is alleged as one of the acts of negligence on the part of the defendant), and some testimony tending to show that the exercise of ordinary care required the removal of the overheated and struggling mule to a shed, where better protection from the inclement weather would have been afforded, we can not say, as a matter of law, that the jury were not authorized to find that the death of the mule resulted from negligence on the part of the railroad company, for which the plaintiff was entitled to recover the amount fixed by the contract, or that the burden on the carrier of rebutting the legal presumption of negligence and of establishing that the death of the mule did not result from its negligence, or from one or more of the causes excepted by the contract, was successfully carried.

A carrier can not exempt itself by contract from the consequences of a tortious act committed through its agents or employees, though not liable as an insurer where it undertakes to transport live stock.

A carrier converting property intrusted to the carrier for transportation will be deemed to have thereby abandoned the contract of shipment, and can not thereafter insist on a stipulation therein that the carrier's liability shall be limited to a fixed sum at which the goods are valued; nor can the carrier insist upon the binding effect of such a stipulation, where the negligence that occasioned the loss was wanton and wilful. 1 Hutch. Carriers (3 ed.), § 432. A carrier can not exonerate himself from the fraud or felony of himself or his servants, and a contract will not avail if the act of the carrier or his servants amounts to misfeasance, though *ordinary* neglect alone in the course of the bailment will not deprive the carrier of the benefit of a contract fairly made which it limits. 1 Hutch. Carriers, §§ 418-478. Where there is a suit for a conversion, the wrong-doer can not take advantage of an agreed valuation of the property in order to lessen the amount of his liability. *Georgia Southern & Florida Ry. Co.* v. *Johnson*, 121 *Ga.* 231 (48 S. E. 807).

It was held when this case was here before that "Evidence of an actual conversion or of some wrongful act, or of wilful or wanton negligence would be necessary, under the present state of the law, before a contract limiting liability on an interstate shipment, by a

16

fixed agreement as to the value of the shipment, would be construed as furnishing no security against the collection from the carrier of the actual value of live stock, where loss occurred; and though it may be conceded that a failure to deliver at the point of destination would raise a presumption against the carrier that a conversion had occurred, the presumption is not conclusive, but may be overcome if it *definitely* [italics ours] appears that such loss resulted from negligence, not amounting to gross negligence, in which event the contract limitation would apply, and the recovery be determined thereby." *N., C. & St. L. Ry.* v. *Truitt Co.,* 14 *Ga. App.* 776 (82 S. E. 469). Under the ruling then made, a recovery was authorized for the inferior mules substituted by the carrier for the mules originally shipped. There was evidence at the last trial to support a finding that three bay mules with fine hair were delivered to the defendant for shipment, and that three mules with coarse hair, altogether different in color and in general appearance, and much less valuable, were delivered at destination. Since the jury accepted as true the proof of substitution, they were authorized to presume a conversion on the part of the carrier, in the absence of any sufficient explanation to negative the idea of a wrongful conversion and of negligence amounting to gross or wanton negligence on the part of the carrier.

The evidence for the defendant showed that the 28 mules shipped by the plaintiff, including the three mules for which three inferior mules had been substituted, were placed in a car at the point of shipment, and the car duly sealed; that the car when it arrived at Atlanta was still sealed; that the mules were unloaded in Atlanta, reloaded in another car, and forwarded to destination, and that on arrival at destination the substitution of three mules was discovered. The testimony of the employees of the defendant who unloaded and reloaded the mules in Atlanta, that the mules were not exchanged, and that all the mules unloaded and reloaded were the same, when taken as a whole, evidently amounted to a mere conclusion on their part, since it does not appear that they took note of each particular mule as it was unloaded, or when reloaded, to see that no substitution occurred, but from this testimony it appears merely that the same number of mules unloaded were reloaded.

The contract of affreightment limited the liability of the de-

fendant to $100 per mule in case of loss by negligence. The evidence discloses no loss merely through *ordinary* negligence, but, taking into consideration the radical difference between the mules shipped and the mules substituted, the jury were authorized to infer such gross negligence on the part of the defendant, through its employees, as amounted to wilful and wanton negligence, and was equivalent to affirmative wrong-doing, and to such a breach of its obligation under the contract of shipment as amounted to an abandonment thereof which would preclude it from setting up the stipulation of limited liability contained in the contract. In other words, the jury might have inferred, from the proof disclosing the entire and very marked difference in appearance between the three mules shipped and the three substituted, that this difference must *necessarily* have been observed by the employees of the defendant at the time the substitution occurred, had *any* diligence whatever been exercised. To make an extreme illustration, if a bull elephant were loaded in a car for shipment and a Kentucky Jenny were received at the point of destination, it could not be rationally maintained either that no substitution occurred on the way, or that such a substitution could have taken place without a total lack of diligence and care on the part of the carrier or its servants, amounting to wanton and wilful negligence, because so gross as to preclude any other conclusion. Res ipsa loquitur.

Again, as was said by Justice Lamar, "the plaintiffs were not obliged both to prove their case and to disprove the existence of a defense;" and since the plaintiffs were not required to *disprove* the existence of wanton or wilful negligence, or of affirmative wrong-doing on the part of the defendant in effecting or allowing the substitution of three inferior mules for three mules of far greater value, the jury could have inferred, from the failure on the part of the defendant to establish that there was *no* wrong-doing or wilful or wanton negligence on the part of the defendant, that the burden of establishing this defense had not been carried by the defendant, upon which such burden properly rested. The carrier and its agents were charged with the duty of explaining why the mules originally shipped were not delivered. "It must be so, because carriers not only have better means, but often the only means, of making such proof." If the failure to deliver was due to some cause against which the carrier could lawfully contract,

"it was for the carrier to bring itself within such exception." Galveston &c. Ry. Co. *v.* Wallace, supra. In this case, under the circumstances detailed by the proof, the carrier only could by any possibility have ascertained exactly how and in what manner the substitution which the jury found had taken place actually occurred, and the carrier alone was in a position to show that such substitution did not occur through any affirmative act of wrongdoing on the part of the carrier or its servants and employees, or because of such gross negligence as might amount to wilful and wanton negligence. Under such circumstances, according to every rule of fairness and reason, the carrier must be held responsible, since otherwise shippers would be absolutely without protection where injurious substitutions of one shipment for another were effected in transit by fraud on the part of the carrier or on the part of any unscrupulous servant of the carrier. The carrier alone having at its command ordinarily the means of showing a lack of wilful and wanton negligence amounting to wrong-doing on its part, it must assume the burden and clear itself of responsibility for the consequences arising from conduct of this character, where it does not appear that the loss occurred through the intervention merely of *ordinary negligence* in respect of which its contract of affreightment limits its liability.

The case was fairly tried under the rules of law laid down by this court in this case when it was here before (14 *Ga. App.* supra) ; and the trial judge did not err in overruling the motion for a new trial.                          *Judgment affirmed.*