## No. 8335.

ATCHISON, TOPEKA & SANTE FE RAILWAY CO. v. MILLER.

1. COMMON CARRIER—*Live Stock—Notice of Injury.* A stipulation in the bill of lading of live stock, requiring, as a condition precedent to a recovery for damage thereto, written notice of the fact and nature of the claim, to be given to the carrier, before the removal of the animal from the destination, is, when founded upon sufficient consideration, valid. A reduced rate of carriage is a sufficient consideration.

2. *Waiver of Notice.* Where the subject of the shipment is interstate commerce the carrier cannot waive the notice.

*Error to Denver District Court, Hon. George W. Allen, Judge.*

Mr. HENRY T. ROGERS, Mr. GEORGE A. H. FRASER, Messrs. ROGERS, ELLIS & JOHNSON, for plaintiff in error.

Mr. John T. Bottom and Mr. Milnor E. Gleaves, for defendant in error.

Mr. Justice Bailey delivered the opinion of the court.

In February, 1912, the defendant in error, E. J. Miller, shipped two carloads of horses for market over the lines of the Atchison, Topeka & Santa Fe Railway Company, plaintiff in error. Miller brought action against the company on January 30, 1913, alleging the delivery to it of fifty-six horses, shipped from Boulder, Colorado, to Camden, Arkansas, to be routed through Pueblo, Colorado, and Kansas City, Missouri, for which he paid freight charges, as demanded by the company; that the company was so negligent and careless in the acceptance of the shipment and carriage of the horses, that all of them, with the exception of six thereof, were unlawfully held upon the train and cars in which they were loaded, without being unloaded, fed, watered or rested, for a period of forty-five and a half hours, contrary to the laws and usages of the United States, and of Interstate Commerce, and the laws of the State of Colorado; that because of such negligent and unlawful acts of the company, the horses were greatly emaciated, weakened, shrunken, damaged and made unfit for sale in the market, and three of them were thereby killed. The items of damage sought, amounting to $2,752.00, based upon the market value, are then set forth.

The substance of the first defense is that the damage, if any, was unavoidable, and was caused by a series of extraordinary, unexpected and unprecedented snow-storms and blizzards prevailing through Kansas and Colorado at the time of moving the horses.

Further answering, and for a second and separate defense, two live stock shipping contracts made, executed and delivered between plaintiff and defendant are relied upon, by which it averred the horses were shipped, each of which, among other provisions, contained the following:

"Eighth. In order that any loss or damage to be claimed by the shipper may be fully and fairly investigated, and

the fact and nature of such claim or loss preserved beyond dispute, and by the best evidence, it is agreed that as a *condition precedent* to his right to recover any damages for any loss or injury to his said stock during the transportation thereof, or at any place or places where the same may be loaded or unloaded for any purpose on the company's road, or previous to loading thereof for shipment, the shipper or his agent in charge of the stock will give *notice in writing* of his claim thereof to some officer of said company or to the nearest station agent or, if delivered to consignee at a point beyond the company's road, to the nearest station agent of the last carrier making such delivery, before such stock shall have been removed from the place of destination above mentioned, or from the place of delivery of the same to the consignee, and before such stock shall have been slaughtered or intermingled with other stock, and will not move such stock from such destination or stock yards until the expiration of three hours after the giving of such notice; and a failure to comply in every respect with the terms of this clause shall be a complete bar to any recovery of any and all such damages. The written notice herein provided for cannot and shall not be waived by any person except a general officer of the company and he only in writing. Nor shall any such damage be recoverable unless written claim therefor shall be presented to the company within ninety-one days after the same may have occurred."

It is averred that plaintiff failed and neglected to give notice of his claim for damages, and that no waiver thereof was given as provided for in this paragraph of the contract.

The replication takes issue on the affirmative matters of the first defense, and pleads to the second defense a waiver of the provisions contained in paragraph eight, consisting of an alleged incident and conversation occurring between plaintiff and a representative of defendant at Kansas City, Missouri, where the horses were unloaded and examined by such representative, who admitted that

they had been damaged, and advised plaintiff to take them through to their original destination, advising him that the company would treat him right. Upon trial a verdict was returned in favor of the plaintiff for the sum of $2,283.10. A motion for a new trial was overruled, and judgment entered on the verdict. Defendant prosecutes this writ of error.

The first question to determine is whether contract requiring that written notice of the fact and nature of any claim for damages be given by the shipper to the carrier before such stock shall have been removed from the place of destination, etc., in the manner provided, as a condition precedent to recovery, is binding and valid, the plaintiff admitting that no such notice was given.

This was an interstate shipment, and is therefore governed exclusively by federal legislation and decisions thereon.

*Adams Express Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. ed. 314, 44 L R. A. (N. S.) 257; *C., B. & Q. Ry Co. v. Miller,* 226 U. S. 513, 33 Sup. Ct. 155, 57 L. ed. 323; *Chicago, St. P. & P. Ry. Co. v. Latta,* 226 U. S. 519, 33 Sup. Ct. 155, 57 L. ed. 328; *Wells Fargo & Co. v. Neiman-Marcus Co.,* 227 U. S. 469, 33 Sup. Ct. 267, 57 L. ed. 600; *Kansas Southern Ry Co. v. Carl,* 227 U. S. 639, 33 Sup. Ct. 391, 57 L. ed. 683; *Atchison & Topeka Ry. Co. v. Robinson,* 233 U. S. 173, 34 Sup. Ct. 556, 58 L. ed. 901; *Boston & Maine Rd. v. Hooker,* 233 U. S. 97, 34 Sup. Ct. 526 58 L. ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593; *Mo., Kans. & Tex. Ry. Co. v. Harris,* 234 U. S. 412, 34 Sup. Ct. 790, 58 L. ed. 1377, L. R. A. 1915E, 942; *St. Louis & S. F. Ry. Co. v. Zickafoose,* 39 Okl. 302, 135 Pac. 406; *St. Louis & S. F. Ry. Co. v. Bilby,* 35 Okl. 589, 130 Pac. 1089; *Chicago, R. I. & P. Ry. Co. v. Bruce* (Okl.), 150 Pac. 880.

Discussing this subject, in *Adams Co. v. Croninger, supra,* the Supreme Court of the United States, reversing the Circuit Court of Kenton County, Kentucky, spoke as follows:

"The question upon which this case must turn is whether the operation and effect of the contract for an interstate shipment, as shown by the receipt or bill of lading, is governed by the local law of the state or by the acts of Congress regulating interstate commerce.

That the constitutional powers of Congress to regulate commerce among the states and with foreign nations comprehends power to regulate contracts between the shipper and the carrier of an interstate shipment by defining the liability of the carrier for loss, delay, injury or damage to such property, needs neither argument nor citation of authority.    *    *    *    *

To hold that the liabilities therein (in the Interstate Commerce Act) declared may be increased or diminished by local regulation or local views of public policy, will either make the provision less than supreme or indicate that Congress has not shown a purpose to take possession of the subject.  The first would be unthinkable, and the latter would be to revert to the uncertainties and diversities of rulings which led to the amendment.  The duty to issue a bill of lading and the liability thereby assumed are covered in full, and though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule. and relieve such contracts from the diverse regulation to which they had been theretofore subject."

There is nothing in the provision which contracts against the negligence or carelessness of the carrier. The requirement of notice simply relates to the question of enforcing a right of recovery, and when, as here, it is founded upon a good and sufficient consideration, a reduced rate, and is in all other respects reasonable, it may, unless waived, lawfully be insisted upon.  Such a stipulation has been declared valid by this and numerous other courts.

*Atchison Co. v. Baldwin,* 53 Colo. 416, 128 Pac. 449, citing *Clegg v. St. Louis & S. F. Ry. Co.,* 203 Fed 971, 122 C. C. A. 273; *Kidwell v. Oregon Short Line,* 208 Fed. 1; 125

C. C. A. 313; *St. Louis & S. F. Ry. Co. v. Bilby, supra;
St. Louis, etc., Ry. Co. v. Overton* (Tex. Civ. App.), 178
S. W. 814; *Georgia, F. & A. Co. v. Blish Milling Co.,* 241
U. S. 190, 36 Sup. Ct. 541, 60 L. ed. 949.

Plaintiff, in his replication, pleaded and at the trial
offered proof tending to establish, that the carrier, by
its conduct, had waived the provision of the contract rela-
tive to giving written notice of claim, and we are thus
brought face to face with the question whether a carrier
is authorized to make such voluntary waiver, when the
contract of shipment is under the provisions of the Inter-
state Commerce Act

It is clear, by the decisions of the Supreme Court of
the United States, as we understand them, not only that
the contractual relation as to notice is valid, but that it
cannot be waived.  In support particularly of the latter
proposition, we cite *N. Y. & N. H. Ry. Co. v. Interstate
Commerce Commission,* 200 U. S. 361, 26 Sup. Ct. 272,
50 L. ed 515; *Armour Packing Co. v. U. S.,* 209 U. S. 56,
28 Sup Ct. 428, 52 L. ed. 681; *Chicago & Alton Ry. v.
Kirby,* 225 U. S. 155, 32 Sup. Ct. 648, 56 L. ed. 1033, Ann.
Cas. 1914A, 501; *A., T. & S. F. Ry. v. Robinson, supra;
Phillips v. Grand Trunk Ry.,* 236 U. S. 662, 35 Sup. Ct.
444, 59 L. ed. 774; *Georgia, F. & A. Co. v. Blish Milling
Co., supra.*  Upon this subject, in *Phillips Grand, supra,*
the court said:

"This will more distinctly appear by considering the re-
quirements of uniformity, which, in this, as in so many
other instances, must be borne in mind in construing the
Interstate Commerce Act.  The obligation of the carrier
to adhere to the legal rate, to refund only what is per-
mitted by law and to treat all shippers alike, would have
made it illegal for the carriers, either *by silence or by ex-
press waiver,* to preserve to the Phillips Company a right
of action which the statute required should be asserted
within a fixed period.  To have one period of limitation
where the point is filed before the Commission and the
varying periods of limitation of the different states, where

a suit was brought in a court of competent jurisdiction or to permit a railroad company to plead the statute of limitations as against some and to waive it against others, would be to prefer some and to discriminate against others in violation of the terms of the Commerce Act, which forbids all devices by which such results may be accomplished. The prohibitions of the statutes against unjust discrimination relate, not only to inequality of charges and inequality of facilities, but also to the giving of preferences by means of consent judgments or the waiver of defenses open to the carrier. The railroad company, therefore, was bound to claim the benefit of the statutes here, and could do so here by general demurrer."

And in *Georgia F. & A. Ry. Co. v. Blish Milling Co., supra,* at page 520, the court said:

"It is urged, however, that the carrier, in making the misdelivery, converted the flour, and thus abandoned the contract. But the parties could not waive the terms of the contract under which the shipment was made pursuant to the federal act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act is aimed."

In *Banaka v. Missouri Pac. Ry. Co.,* 193 Mo. App., 345, 186 S. W. 7, the Court had under consideration the question whether an interstate carrier can waive the requirements in the bill of lading that notice of claim for damages must be presented within a certain specified time, and said:

"But plaintiff relies upon a waiver of notice by conduct. That is to say, defendant by its acts and conduct waived its privileges with respect to notice in this: That it accepted and received plaintiff's claim without protest or complaint, after the limitation of four months had ex-

pired, and that it treated with plaintiff since four months after a reasonable time for delivery had expired, and declined to pay on other grounds than want of notice. The federal Commerce Act is designed to prevent discrimination between shippers, and its object is to nullify any device whereby the carrier may practice favoritism between them."

The court refers to the language employed in the *Phillips* case, *supra,* quoted above, and concludes:

"Under this rule of equality we think a carrier cannot say to one shipper, 'I will enforce the burdensome terms of our contract requiring notice in a specified time,' and to another, 'I will release you from the same provisions in the same character of contract.' We do not say that a situation might not exist whereby a shipper would be relieved of the necessity of giving notice of loss, but we do say that a carrier may not, by his voluntary act, release one and hold the other."

The same conclusion was reached by the same court in *Kemper Mill Co. v. Missouri Pacific Ry. Co.,* 193 Mo. App. 466, 186 S. W. 8.

In *Wall v. Northern Pac. Ry. Co.,* 161 Pac. Rep., at page 520, the Supreme Court of Montana had this to say:

"When we realize that the ultimate object of the Commerce Act is to guarantee to interstate shippers absolute equality in rates and treatment, and to prevent unjust discriminations, by whatever means employed, the conclusion is forced that the carrier cannot waive a provision of the bill of lading of the character of the one under consideration. To permit the carrier to say to one of two competing shippers: 'If you do not present a notice of your claim for damages within the time limited by the bill of lading, your right to sue shall be forfeited,' and to another shipper, under similar circumstances: 'Notwithstanding your failure to give the required notice, your right to press the claim, by negotiations or in court, will not be disputed and no question will be raised upon your failure to give notice,' would result in substituting for the written con-

tract of shipment what is in effect a special agreement, not filed with nor sanctioned by the Interstate Commerce Commission, and one whereby the latter shipper would secure a decided preference and advantage over his less fortunate competitor. It was plainly the intention of Congress that the shipping contracts should be such only as meet the approval of the Commission; that .they ;shall be published for the benefit of all intending shippers alike; that they shall be rigidly adhered to by both shipper and carrier; and all the terms and provisions carried into effect with good faith. If the carrier cannot waive the defense that the action against it was not commended within the time limited by statute, as held in the *Phillips* case above, neither can it waive the defense that the required notice was not presented in time."

The Supreme Court of Oklahoma, in *Mo., K. & T. Ry. Co. v. Lynn,* reported in 161 Pac., at page 1058, had under consideration a like question. The third assignment argued before that court is in these words:

"The provisions of the shipping contract were valid and reasonable; defendant did not, and could not, waive the provisions for written notice and plaintiff, having failed to give such notice cannot recover."

The clause of the contract there under consideration, section seven, is as follows:

"7. The shipper, or party or parties in charge of said cars will only be carried on the train drawing said cars, in accordance with the rules on the back hereof, and the failure to observe such regulations shall be an absolute bar to any right to recover damages for any injuries or deaths resulting from such failure to observe the same. And he or they and each and every of them, who shall receive any injuries by reason of the negligence of the carrier, or otherwise; shall have no right of action therefor, unless notice in writing of the claims for damages on account of such injury be given the nearest, or any other convenient local agent of said railway company at St. Louis, Mo., within ten days of the date of the injury. Such

notice must state the time, place and particulars of the injury and the nature and extent of the damages, and no other or further damages can be recovered than those set forth in this notice."

The court held that as the contract was for an interstate shipment, the question involved was governed exclusively by federal law, and after citing a number of federal authorities, including *Phillips v. Grand Trunk Ry.*, *supra*, and *G. F. & A. Co. v. Blish Milling Co.*, *supra*, expressed its conclusion on the question of waiver in the following language:

"We, therefore, conclude that the carrier may not waive the conditions of the contract, requiring the giving of notice as contained in paragraph seven, and since the notice required by the contract in question was not given, such provision being reasonable and valid, the failure to give same is a complete bar to the action of the plaintiff."

We are fully persuaded that, under the Federal decisions, and those of the courts of last resort in Montana, Missouri and Oklahoma, on the proposition here involved, it was the duty of the carrier to insist upon all the conditions of the shipping contract, and that it could not voluntarily waive the condition for notice of claim required by section eight thereof, except through a general officer of the company in writing, as therein provided.

The provision of paragraph eight of the contract, under which shipment was made, is in all respects reasonable, valid and binding, and plaintiff, having failed to give notice of his claim, as therein required, that being a condition precedent to his right of action, is not in position to maintain this suit.

The judgment is therefore reversed, and the cause remanded, with instructions to dismiss it.

On re-hearing, former opinion withdrawn, and this substituted in lieu thereof.

Decision *en banc.*

Mr. Justice Hill and Mr. Justice Scott dissent.

Mr. Justice Allen not participating.

Mr. Justice Hill dissenting:

I cannot agree with the conclusion that the ruling of the federal courts is to the effect that the plaintiff cannot recover. This conclusion appears to have been reached by analogy only. As I read the federal cases, none of them apply to a state of facts like those shown to exist here. Those concerning the time within which an action can be brought can have no application. Likewise, those holding that an arrangement granting special privileges to one shipper not awarded to others is void, in my opinion, are not applicable. Neither do those concerning the waiver of the notice cover the questions of estoppel by acting upon the verbal notice, nor the question concerning the actions of the company, which caused the shipper not to give the notice. These questions are raised in this case.

The opinion states that the plaintiff, in his replication, pleads a waiver of the provisions of the contract pertaining to notice. The replication does not so state; but, as allowed by our Code, it alleges the facts which took place between the plaintiff and the defendant, through its agents, from which it is readily apparent that the plaintiff was lulled into a feeling of security that the company would adjust the claim without a written notice, which caused him to give the question of notice no further consideration at that time. From these facts several conclusions can be drawn (a) That the company waived the provisions of the contract pertaining to notice. (b) If the agents were without this power and for that reason the waiver did not bind the company, then the company accepted something in lieu of the written notice, which, in this case, was just as good, and which they acted upon, and which, so far as the notice was concerned, performed the same purpose, viz., gave it the opportunity to examine the stock before it was removed from the company's yards or intermingled with other stock and within the time provided by the shipper's contract. This an agent of the company, by special instructions from the general office, did, for which reason it appeals to me that the company

is thereby estopped from claiming that it did not have the benefit of the written notice. This question has never been passed upon by the federal courts in any case cited or which I have been able to find. The law never requires a useless thing, and unless the Supreme Court of the United States holds to the contrary, I will continue to thus believe. (c) The testimony is overwhelming concerning the damage to the stock, the company's violation of an interstate commerce act concerning shipments of this kind, etc. It also discloses that Kansas City was the terminus of defendant's road for this shipment, at which point the horses were unloaded by its agents; that after being unloaded, the plaintiff immediately went to defendant's general office and told them that he had two carload of horses there, and explained to them how he had been treated; that they had been forty-five and one-half hours on the track, standing at one time ten hours without feed or water, and that the company could keep them, etc.; that they said it was not necessary to have any trouble, etc.; that they would go down and look at them; that they sent an agent down with him; that they ran the horses out of the corral, one by one, and examined them; that this agent said, "Well, Mr. Miller, there is no doubt you are entitled to some damages; now I will tell you what we will do, you know what you paid for them, you take them on and sell them, and whatever you lose on these cars of horses, you keep track of and you come back here and the Santa Fe Company will settle with you right, whatever is fair and right we will do about it;" that in answer the plaintiff said, "I don't like to do that"; that in response the representative of the company said, "Now we will do it, you come right back here and hunt me up," etc. The record discloses that, relying upon this assurance, the plaintiff took the horses on to final destination, and soon thereafter notified the company in writing of the extent of his loss, etc.

When we consider that a railroad company must, of necessity, act through agents, and that the plaintiff gave

notice to those in charge of its general offices in Kansas City and that the representative of the company, who lulled him into this feeling of confidence, was sent from that office to inspect the stock, and that it was through his representations and assurances that the plaintiff was persuaded to continue with the stock instead of leaving it upon the company's hands; under such circumstances, to hold that the defendant is not estopped from raising the question of written notice, is, in my opinion, to hold that the interstate commerce acts can be used to allow transportation companies to perpetrate fraud upon their patrons. Certainly such was never intended. In my opinion, the rule of estoppel is applicable here, and to so hold does not present a case of discrimination.

The Supreme Court of the United States has held where a shipper secures the lower of two rates by misrepresentations as to the value of his goods and a loss follows, that he is estopped from claiming a greater value, although this releases the carrier from a portion of the loss due to its negligence, which could not be thus accomplished except under the rule of estoppel. *Wells-Fargo Co. v. Neiman Marcus Co.*, 226 U. S. 469, 57 L. ed. 600, 33 Sup. Ct. 267. It will be observed that by this opinion the matter is essentially one of estoppel and not one of discrimination, though a discrimination might be involved. I am of opinion that this ruling is applicable here, and that the plaintiff is as much entitled to an estoppel as the transportation company was in the case cited, and that it does not show a discrimination in one case any more than in the other, and to so hold, in my opinion, would be to grant a preference to the transportation company in the one case not awarded to the shipper in the other through a distinction which, in fact, fails to create a difference.

The provisions in the shipper's contract concerning notice was evidently intended to protect the carrier from improper or unconscionable claims, etc., under circumstances where it would have no means of rebutting proof available. Such was not the case here. The carrier had

notice at its general office; verbal, 'tis true. And possibly the federal courts may hold that it did not have to act upon this notice, but in this case it did act, it secured all the information that a written notice would have given, but it did not stop there, by its assurance that the claim would be properly .adjusted, it persuaded the shipper to continue with his shipment, thereby inducing him to fail to give the notice, without which it now claims that he cannot recover. No decision of the Supreme Court of the United States has been cited to the effect that under such circumstances the defendant is not estopped to take advantage of its own wrong, or that to prohibit it from so doing would 'be a discrimination prohibited by an interstate commerce law.

In my opinion the reasoning in *A., T. & S. F. Ry. Co. v. Robinson,* 36 Okl. 435, 129 Pac. 20; *Cockrill v. M., K. & T. Ry. Co.,* 90 Kan. 650, 136 Pac. 322; *Hardin v. Mo. Pac. Ry. Co.,* 120 Mo. App. 203, 96 S. W. 681; *Cumbie v. St. L., I. M. & S. Ry. Co.,* 105 Ark. 406, 151 S. W. 237; *Kelly v. So. Ry. Co.,* 84 S. C. 249, 66 S E. 198, 137 Am. St. Rep. 842; *Baldwin v. Atlantic Coast L. R. Co.,* 170 N. C. 12, 86 S. E. 776; *Mewborn & Co. v. L. & N. R. Co. et al.,* 170 N. C. 205, 87 S. E. 37; *Shaw v. S. Ry. Co.,* 17 Ga. App. 79, 86 S. E. 95; and *Nashville, C. & St. L. R. Co. v. Truitt,* 17 Ga. App. 236, 86 S. E. 421—are in part applicable to the facts here, but .this case goes farther than the facts covered by the reasoning in the cases cited. It presents a state of facts whereby the refusal to apply the rule of estoppel is to allow the defendant to receive the benefit of its wrongful act, without which it would not have been possessed with this advantage.

Decided March 6, A. D. 1916. Rehearing granted July 3, A. D. 1916. Judgment reversed March 5, A. D. 1917.